IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. LUSTYIK, JR.,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Defendant. | ORDER AND<br>MEMORANDUM DECISION<br><br>Case No. 2:18-cv-00077-TC |

On October 18, 2012, Robert G. Lustyik, Jr., was charged with one count of conspiracy, eight counts of honest services wire fraud, one count of obstruction of justice, and one count of obstruction of proceedings before a department or agency. (645 ECF No. 39.)[1] After pleading guilty to all eleven counts, he was sentenced to 120 months in custody. (645 ECF Nos. 896, 1030.)

Mr. Lustyik has now filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, contending that his counsel in the original action was ineffective. (77 ECF No. 1.) He also requests a hearing to present evidence in support of his motion. (77 ECF No. 4.) For the reasons stated below, both motions are denied.[2]

---

[1] "645 ECF" refers to the electronic case filing system for the original action, United States v. Lustyik, Case No. 2:12-cr-00645-TC. The court refers to the docket in the instant action, Lustyik v. United States, Case No. 2:18-cv-00077-TC, as "77 ECF."

[2] There is also a pending request for the appointment of counsel. (77 ECF No. 6.) "There is no constitutional right to appointment of counsel in a § 2255 proceeding." United States v. Lewis, No. 97-3135-SAC, 1998 WL 1054227 at *3 (D. Kan. Dec. 9, 1998). Although the court has discretion to appoint counsel, it declines to do so because, like

# LEGAL STANDARD

To succeed on his claim of ineffective assistance of counsel, Mr. Lustyik must satisfy the two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under the first prong, the petitioner must show that his attorney's representation fell below an objective standard of reasonableness. <u>Id.</u> at 688. "Judicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. As part of that deferential standard, the United States Supreme Court has established "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id.</u> (citation and internal quotation marks omitted).

Second, the petitioner must establish that he was prejudiced by the allegedly deficient representation. <u>Id.</u> at 687, 693 (the petitioner must "affirmatively prove prejudice"). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. Instead, when a petitioner challenges a conviction, he "must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

The court may consider these two prongs in either order, or it may address just one of the prongs. <u>Id.</u> at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

---

in <u>Lewis</u>, "The court finds no compelling merit to the defendant's allegations. The defendant has demonstrated the ability to investigate the facts necessary for his issues and to articulate them in a meaningful fashion. [And] [t]he issues are straightforward and not so complex as to require counsel's assistance." <u>Id.</u>

A petitioner "is entitled to an evidentiary hearing unless his motion and the files and records of the case 'conclusively show that [he] is entitled to no relief.'" United States v. Estrada, 849 F.2d 1304, 1306 (10th Cir. 1988) (quoting 28 U.S.C. § 2255).

## ANALYSIS

Mr. Lustyik's motion asserts seven grounds for relief, and each ground is supported by anywhere from two to eight factual allegations (though some of these facts are duplicative of one another). (See 77 ECF No. 1.) After reviewing Mr. Lustyik's motion, reply, and evidence,[3] the court has identified thirty-seven discrete allegations in support of his motion. These thirty-seven facts are attached as an appendix to this order, together with the source of each allegation.

The court divides these claims into three categories: (1) Misconduct before trial; (2) Misconduct regarding the plea; and (3) Misconduct after the plea, including during the forfeiture hearing, sentencing, and appeal.

## I.    Counsel's Conduct During the Pretrial Phase

Most of Mr. Lustyik's complaints are leveled against his primary attorney, Raymond Mansolillo, and involve Mr. Mansolillo's allegedly ineffective approach to defending Mr. Lustyik in the years preceding the trial.[4] All of these allegations fail the first prong of the Strickland analysis because Mr. Mansolillo was not actually ineffective during this stage of the proceedings. Most of the allegations also fail to show resulting prejudice, as required by the second prong.

---

[3] Generally, the court would not consider evidence submitted for the first time in support of a reply, but here, the United States was given an opportunity to address this additional evidence in its sur-reply. (See 77 ECF No. 31.)

[4] In addition to Mr. Mansolillo, who is an out-of-state attorney, Mr. Lustyik was represented by local counsel, first Nathan Crane, and then Michael Langford. Mr. Lustyik's motion rarely identifies which attorney he is accusing of ineffectiveness, but it is clear from context that (except for certain post-plea matters involving Mr. Langford) Mr. Mansolillo is the primary target.

### A.   Prong One

1.  Legitimate Strategic Choices

[S]trategic choices [by defense counsel] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 690-91.

Nine of Mr. Lustyik's allegations involve legitimate strategic choices.

First, Mr. Lustyik criticizes Mr. Mansolillo because he never objected to Mr. Lustyik's treatment during his arrest and the search of his home.  (See Affidavit of Robert Lustyik ("Lustyik Decl.") at ¶¶ 10-13, Motion Ex. B (77 ECF No. 1-2).)[5]  But fighting over the search and arrest would have been a distraction from the substantive defense of the case.  Relatedly, Mr. Lustyik complains that Mr. Mansolillo relied on Daniel Marino and Tillman Finley, the attorneys for Mr. Lustyik's co-defendant Michael Taylor, to pursue a motion to suppress evidence, rather than filing his own motion.  (Id. at ¶ 28.)  But in the court's view, it was reasonable to allocate sparse resources by relying on the work of others.  In fact, counsel for Mr. Taylor did a thorough job advocating for the motion to suppress (see Oct. 15, 2013 Hearing Transcript, Reply Ex. FF (77 ECF No. 21-32)), even though it was ultimately denied.  It was smart, not ineffective, for Mr. Mansolillo to let Mr. Taylor's counsel take the lead there.

---

[5] In support of his motion, Mr. Lustyik submitted eighteen exhibits, labelled Exhibit A through Exhibit S.  In support of his reply, Mr. Lustyik submitted an additional thirty-eight exhibits, labelled Exhibit A through Exhibit LL.  Because the letters used to identify the exhibits overlap, the court identifies the exhibits as "Motion Ex. A" or "Reply Ex. A" to make clear which exhibit is being discussed.

Somewhat confusingly, in addition to arguing that Mr. Mansolillo relied too much on other defendants' counsel, Mr. Lustyik also criticizes Mr. Mansolillo for not working more closely with them. He contends that Mr. Mansolillo was ineffective because he did not obtain a joint defense agreement with Mr. Lustyik's co-defendants. (Lustyik Decl. ¶ 40.) It is contradictory for Mr. Lustyik to simultaneously claim that Mr. Mansolillo was working too closely with the other defense counsel and that he was not working with them closely enough. In any event, not obtaining a joint defense agreement is another strategic choice.

Mr. Lustyik also asserts that Mr. Mansolillo failed to seek a plea deal early in the case, despite Mr. Lustyik's request that he do so. (Id. at ¶¶ 8-9, 20-21, 30-35, 53, 55.) But when the court asked about the possibility of settlement, both sides indicated they were waiting for the other side to initiate negotiations. (See Mar. 27, 2014 Hearing Transcript at 22:11-25, Motion Ex. M (77 ECF No. 1-13). Waiting for the other party to make an initial settlement offer is a legitimate tactic.

Mr. Lustyik next faults Mr. Mansolillo for not taking his discovery obligations seriously. Mr. Lustyik declares that Mr. Mansolillo sent his investigator, Charles Mulcahy, to review classified discovery, rather than review it himself; that he failed to conduct discovery into Blue Meadows Energy, LLC ("BME"), an entity allegedly used to funnel money between Mr. Taylor and Mr. Lustyik; and that he did not interview any of the numerous potential witnesses Mr. Lustyik urged him to contact. (Lustyik Decl. ¶¶ 42, 46-51). None of this conduct falls below the standard of care of a reasonable attorney. Relying on staffers like Mr. Mulcahy to take the lead in discovery is a common, reasonable practice. Notably, Mr. Lustyik has nothing but praise for Mr. Mulcahy's efforts. (Id. at ¶ 35.) And at the time in question, Michael Feldman, the founder of BME, had invoked his Fifth Amendment right against self-incrimination. (Id. at ¶ 50.) It

would be reasonable in that context to assume that an investigation of BME would be both heavily resisted by Mr. Feldman and unlikely to lead to inculpatory information. Finally, Mr. Lustyik's own declaration explains that most of the witnesses identified by Mr. Lustyik were likely to be uncooperative because they were current or former government officials subject to nondisclosure agreements and the information Mr. Lustyik sought from them was classified. (Id. at ¶ 51.) Given these impediments, it makes sense for Mr. Mansolillo to focus his efforts elsewhere.

Lastly, Mr. Lustyik argues that Mr. Mansolillo should have tried to convince the court that the whole case was a prosecutorial sham. Mr. Mansolillo never challenged the involvement of prosecutor Kevin Driscoll in the case, despite Mr. Lustyik's belief that Mr. Driscoll was biased against former FBI agents like Mr. Lustyik. (Id. at ¶ 16-18.) And Mr. Mansolillo never investigated whether the suit was brought in retaliation for the fact that Mr. Lustyik had been cleared of wrongdoing in an unrelated investigation, which had angered some Department of Justice officials. (Id. at ¶ 19.) But again, in the court's view, it was a wise choice—and protected strategy—to avoid spending time on these issues. These arguments are both highly speculative and almost completely irrelevant, and it would have been a significant waste of time for Mr. Mansolillo to pursue these improbable defenses.

In response to Mr. Lustyik's allegations, the United States suggests that Mr. Mansolillo essentially had one strategy throughout the trial preparation phase. He wanted to "graymail" the United States into dropping the charges against Mr. Lustyik by forcing them to choose between risking the exposure of classified information and going through with the trial. (See Memorandum in Opposition ("Opp.") at 8 (77 ECF No. 10).) According to the United States, Mr. Mansolillo believed that if forced to make that choice, the United States would end the case

against Mr. Lustyik rather than allow the disclosure of such information. Ultimately, that strategy was unsuccessful because the court issued an order preventing Mr. Lustyik from introducing any classified information in his defense. (See CIPA Section 6(A) Order (645 ECF No. 883).) But the United States contends it was a reasonable strategy, and that all of Mr. Mansolillo's other strategic decisions, discussed above, should be considered in light of this objective.

The court agrees that this appears to have been Mr. Mansolillo's strategy. There is evidence in the record that supports this conclusion. For example, this is the same strategy Mr. Lustyik advised Mr. Taylor to take to avoid prosecution in an earlier action. (Email Exchange, Opp. Ex. 1 (77 ECF No. 10-1) ("[T]hey [the prosecutors] haven't seen any of the classified info. Now they will. And if your attny wants it all declassified then you can destroy their investigation.").) Mr. Mansolillo also explicitly discussed this strategy in open court, when explaining how the Classified Information Procedures Act (CIPA) operates:

> [T]he Court does not look at what the sensitivity of that [classified] information is, it looks at what the Federal Rules of Procedure and what the Rule[s] of Evidence are and whether it is going to benefit the defense.
>
> It is up to the government, and if they want to keep it out, it is up to their policymakers, and they will probably do this, to send in a motion saying or a certification, they call it, saying that this information is too sensitive to be disclosed. That is kind of, quote, the warning that it is either a disclose or dismiss situation that they are getting down to.

(June 24, 2013 Hearing Transcript at 15:2-14, Reply Ex. AA (77 ECF No. 21-27).)

And the court further agrees that this was a reasonable strategy, even though it proved unsuccessful. As the Supreme Court has noted, "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. Mr. Mansolillo had a legitimate

defense strategy and pursued it, and Mr. Lustyik cannot now use this § 2255 petition to second-guess that strategy.

    2. Competent Conduct

The above allegations involve Mr. Mansolillo's omissions, such as defenses he chose not to pursue. But Mr. Lustyik also argues that when Mr. Mansolillo did act, he did so incompetently. For example, Mr. Lustyik claims that during his bond revocation hearing, Mr. Mansolillo was ineffective in challenging the conditions of Mr. Lustyik's home confinement, despite the impact that had on their ability to communicate about case preparation. (Lustyik Decl. ¶ 14.) But the court has reviewed the transcripts of the bond revocation hearings and finds that Mr. Mansolillo was an effective advocate, even if he did not achieve all that Mr. Lustyik wanted. (See Feb. 13, 2013 Hearing Transcript, Reply Ex. EE (77 ECF No. 21-31); Mar. 19, 2013 Hearing Transcript, Reply Ex. R (77 ECF No. 21-18); May 3, 2013 Hearing Transcript, Reply Ex. CC (77 ECF No. 21-29).)

Mr. Lustyik next notes that Mr. Mansolillo was threatened with contempt of court when he failed to return certain unintentionally divulged classified information to the United States. (Id. at ¶ 22; 645 ECF No. 517.) But this shows only that Mr. Mansolillo was determined to keep discovery to which he believed he was entitled, which contradicts Mr. Lustyik's characterization of Mr. Mansolillo as being uninterested in the discovery issues that arose in the underlying case.

Mr. Lustyik also suggests Mr. Mansolillo provided ineffective assistance of counsel when he failed to convince the court to allow Mr. Lustyik to use classified information as part of his defense. The court disagrees. The parties submitted exhaustive briefing related to the classified information issue, and the court thoroughly considered whether it needed to be disclosed to the defense. While the court ultimately ruled against Mr. Lustyik, that was due to the court's

conclusion that the information was inadmissible under Federal Rules of Evidence, Rules 401 and 403.  (See CIPA Section 6(A) Order (645 ECF No. 883).)  It was not because Mr. Mansolillo's "representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.[6]

### 3. Conflict of Interest

Mr. Lustyik also alleges that Mr. Mansolillo had a conflict of interest while representing him.  (Lustyik Decl. ¶ 40.)

In the underlying proceeding, the United States warned that Mr. Mansolillo had a conflict of interest with Mr. Taylor's original counsel, Steven Brooks, and moved to disqualify Mr. Mansolillo on that ground.  (645 ECF No. 61.)  But Mr. Lustyik waived any such conflict in order to keep Mr. Mansolillo as his attorney.  (645 ECF No. 194.)  Before he did so, the court appointed independent conflict counsel to advise Mr. Lustyik regarding how he should proceed. (645 ECF No. 174.)  And the court personally examined Mr. Lustyik regarding his understanding of the consequences of waiving a conflict of interest.  (645 ECF No. 194.)  This process fully resolved any concerns regarding that conflict.

Mr. Lustyik now argues there was an additional conflict between Mr. Mansolillo and Mr. Taylor.  Mr. Mansolillo worked for Mr. Taylor at some time in the past, and this employment violated Mr. Mansolillo's contract with his other employer, the Drug Enforcement Agency. Knowledge of this violation gave Mr. Taylor leverage over Mr. Mansolillo, according to Mr. Lustyik.  (Reply at 5 (77 ECF No. 21).)

---

[6] Mr. Lustyik claims in his reply brief that "[i]n the CIPA Order, the Court stated, 'Any harm to the Defendants was caused by their attorneys.'"  (Reply at 10 (77 ECF No. 21).)  But the quoted language is not from the CIPA order. Rather, that language comes from an earlier order denying Mr. Lustyik's request to continue trial.  (See 645 ECF No. 705.)  Notably, the issue in that motion—whether Mr. Mansolillo had deleted his discovery records and needed an additional year to recreate this work product—has not been raised by Mr. Lustyik as an example of ineffective assistance of counsel in this motion.

While Mr. Lustyik characterizes this as a new, previously undisclosed conflict, he is incorrect. This issue was explicitly raised by the United States in the original action before Mr. Lustyik waived the conflict of interest. (See Addendum to Motion for Conflict Hearing (645 ECF No. 71).) Mr. Lustyik still chose to knowingly and voluntarily waive this conflict. Accordingly, this argument does not entitle him to any relief.

4. Financial Motive

Finally, Mr. Lustyik provides evidence that Mr. Mansolillo was aggressively harassing Mr. Lustyik about certain unpaid legal bills during the suit. (Lustyik Decl. ¶¶ 16, 24-25, 95-98.) Mr. Lustyik previously presented this same evidence to Magistrate Judge Dustin Pead as part of his motion to have Mr. Mansolillo removed as his attorney, which was granted on November 7, 2014. During that hearing, Judge Pead made no findings of fact regarding Mr. Mansolillo's conduct because it was not necessary for the motion to be granted, but he did "make . . . very, very clear for the record" that, if Mr. Lustyik's allegations were true, "[i]t would be absolutely improper and unethical." (Nov. 7, 2014 Unofficial Hearing Transcript, Reply Ex. BB (77 ECF No. 21-28).)

But this evidence, even if concerning from an ethical standpoint, is irrelevant to the present motion. Mr. Lustyik plausibly shows that Mr. Mansolillo had a motive to be lazy or half-hearted in his representation of Mr. Lustyik because of their ongoing payment dispute. But Mr. Lustyik has not shown that Mr. Mansolillo actually performed poorly. Rather, as discussed above, all of Mr. Mansolillo's allegedly improper actions were consisted of effective representation or legitimate strategic choices. It is not enough for Mr. Lustyik to identify a motive for ineffectiveness, when he has not also shown that Mr. Mansolillo was actually ineffective.

Accordingly, none of Mr. Lustyik's allegations of pretrial misconduct rise to the level of ineffective assistance of counsel.[7]

## B.     Prong Two

To satisfy the second prong, Mr. Lustyik must show that "but for counsel's professional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because of its findings on the first prong, the court need not reach this issue. Nevertheless, it briefly notes that most of Mr. Lustyik's allegations also fail the second prong.

For example, Mr. Lustyik's complaints about early decisions by Mr. Mansolillo—not challenging the search of his home or his arrest, failing to challenge the terms of his home confinement—have no apparent connection to the resolution of the proceeding. Additionally, Mr. Driscoll was removed from the case in early 2013 due to paternity leave (Lustyik Decl. ¶ 17), so Mr. Mansolillo's failure to challenge his involvement could have no plausible affect on Mr. Lustyik's ultimate decision to plead guilty rather than go to trial. Mr. Lustyik also has not articulated how his arguments about retaliation by the Department of Justice would have altered the outcome of the case, since a claim that the prosecutors were targeting him would not change his guilt or innocence.

Next, there is no reason to believe Mr. Mansolillo would have been more successful on the motion to suppress than Mr. Taylor's counsel. And the fact that Mr. Mansolillo was threatened with contempt of court nearly a full year before trial would not have impeded Mr. Lustyik's defense. Finally, as noted, Mr. Feldman had invoked his Fifth Amendment right

---

[7] The United States claims that, even if Mr. Mansolillo was ineffective, any misconduct by Mr. Mansolillo was "cured" by Mr. Crane and Mr. Langford's simultaneous involvement in the case. (See Opp. at 4 n.2 (77 ECF No. 10).) But the United States cites no case law in support of this proposition and Mr. Lustyik has submitted evidence showing that Mr. Crane and Mr. Langford were almost entirely uninvolved in Mr. Lustyik's representation so long as Mr. Mansolillo was the lead attorney. (See Hearings List, Reply Ex. B (77 ECF No. 21-2); Crane Email, Reply Ex. L (77 ECF No. 21-12).) Accordingly, the court concludes that the presence of Mr. Crane and Mr. Langford does not moot Mr. Lustyik's claims.

against self-incrimination, so even if Mr. Mansolillo had diligently pursued calling him as a witness, this would not have helped Mr. Lustyik obtain a different outcome.

In sum, Mr. Lustyik has not demonstrated that Mr. Mansolillo's pretrial conduct violated Mr. Lustyik's Sixth Amendment right to effective assistance of counsel.

## II.     Counsel's Conduct During the Pleading Phase

Mr. Lustyik next asserts that Mr. Mansolillo failed to provide effective representation when he urged Mr. Lustyik to plead guilty on the day trial was set to begin.

The same <u>Strickland</u> two-part test discussed above also applies here.  But the Supreme Court has provided additional clarification regarding the test's application when a defendant pleads guilty:

> In the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than a restatement of the standard of attorney competence . . . .  The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

<u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985).

## A.     Lack of Prejudice Due to Court Intervention

Mr. Lustyik pled guilty, without the benefit of any plea agreement, on September 29, 2014.  (Change of Plea Transcript at 4:22-23, 5:10-11 (645 ECF No. 907).)  He argues he would not have pled guilty if Mr. Mansolillo had properly apprised him of the consequences of his plea.  Specifically, he contends that Mr. Mansolillo did not explain to him (1) the risks of pleading guilty without a plea agreement; (2) the effect that pleading guilty in Utah would have on a separate, ongoing case in New York; (3) the length of sentence that he was likely to receive; (4) that he was pleading guilty to all counts, instead of just some counts; and (5) that he would be

receiving two points of downward variance in the sentencing guidelines for accepting responsibility, instead of three points.  (Lustyik Decl. ¶¶ 70-73, 78-79.)  Mr. Lustyik also claims that Mr. Mansolillo bullied him into accepting the plea.  (Id. at ¶¶ 74, 76, 84-86, 95-98.)

Assuming that Mr. Mansolillo was ineffective in advising Mr. Lustyik of the foregoing, the court cured the problem by discussing these issues with Mr. Lustyik before he entered his plea.

> [Although] no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a per se rule rendering it uniformly invulnerable to subsequent challenge, . . . the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (internal quotations omitted).

The court, in detail, addressed each of the above complaints.  (See Change of Plea Transcript at 5:1-11; 49:10-21 (discussing the lack of a plea deal); at 4:14-5:7 (discussing the New York case); at 37:9-38:18, 40:20-41:14 (discussing the length of sentence and size of forfeiture); at 5:3-7, 40:1-19, 50:8-11 (discussing points for accepting responsibility); at 29:5-12; 37:6-38:11 (discussing all counts); at 12:1-16:1 (confirming that Mr. Lustyik's plea was of his own free will).  This is sufficient.

Accordingly, Mr. Lustyik was not prejudiced by Mr. Mansolillo's alleged failure to warn him of the consequences of pleading guilty.

**B.  Lack of Prejudice Due to Likely Conviction at Trial**

Mr. Lustyik also states that he only pled guilty because he realized that Mr. Mansolillo was completely unprepared for trial.  Mr. Lustyik declares that, days before trial was set to begin, he was informed by Daniel Calabro (counsel for his co-defendant, Johannes Thaler) that Mr.

Mansolillo was unprepared.  (Lustyik Decl. ¶ 65-66.)  Mr. Lustyik notes that he also became concerned about Mr. Mansolillo's lack of preparation when he realized Mr. Mansolillo failed to bring his investigator, Mr. Mulcahy, to Utah, even though Mr. Mulcahy was essential to the defense.  (<u>Id.</u> at ¶ 67.)  And Mr. Lustyik claims he observed for himself in the weekend before trial that Mr. Mansolillo was unprepared.  (<u>Id.</u> at ¶¶ 63-67.)

Assuming that Mr. Mansolillo was ineffective because he was unprepared for trial (a reasonable assumption given that, as discussed above, it appears his primary strategy was to prevail on the CIPA motion, which he did not do), the court nevertheless concludes Mr. Lustyik was not prejudiced by this lack of preparation.  The Supreme Court has warned that "[a] defendant without any viable defense will be highly likely to lose at trial.  And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial."  <u>Lee v. United States</u>, 137 S. Ct. 1958, 1966 (2017).  Here, although no plea agreement was reached, Mr. Lustyik was able to receive a two-point downward variance in the calculation of his sentence for accepting responsibility by pleading guilty.  He has not shown a reasonable probability that, even with competent counsel, he would have obtained a better outcome than this, because the evidence against him was overwhelming.

The United States, citing the indictment, identifies numerous incriminating text messages and emails between Mr. Lustyik and his co-defendants, Mr. Taylor and Mr. Thaler.  (<u>See, e.g.</u>, Indictment ¶¶ 12-17, 20, 61, 71, 97-99 (645 ECF No. 39).)  Mr. Lustyik does not dispute the veracity of these messages.  Instead, he suggests the messages have been taken out of context and actually show that he was simply using Mr. Taylor as a potential FBI source, not conspiring with him.  (Lustyik Supplemental Declaration ¶¶ 4-6, Reply Ex. H (77 ECF No. 21-8).)  Mr.

Lustyik argues this shows he could have prevailed at trial by asserting a public authority defense, which "requires a defendant to show that he was engaged by a government official to participate in a covert activity." <u>United States v. Apperson</u>, 441 F.3d 1162, 2004 (10th Cir. 2006).

Based on the messages alone, no reasonable jury would have applied this defense and acquitted Mr. Lustyik. Indeed, Mr. Lustyik appears to acknowledge that the messages are not enough by themselves. He repeatedly states that this defense was contingent upon his obtaining access to classified information. (<u>See, e.g.,</u> Reply at 3 ("Classified FBI records verify this."); at 3 ("Classified Govt records would again confirm those facts."); at 9 ("Attempts to introduce classified information as part of my defense at trial were needed to prove that I was acting within the scope of my employment."); at 10 (Mr. Mansolillo was "unprepared to explain to the Court what classified information was necessary and how that specific information was vital to the defense."); at 10 (Mr. Mansolillo did not provide the court with "the specific examples of classified evidence needed to support the timeline and other proof of the legality of Petitioner's counterintelligence activity."); at 13 ("Classified evidence from the Taylor file would show that . . . I was acting in full accord with counterintelligence norms.").)

In other words, Mr. Lustyik's declaration that he would have gone to trial rather than plead guilty if Mr. Mansolillo was better prepared is simply a rehashing of the argument, rejected above, that Mr. Mansolillo was ineffective in convincing the court to allow the release of classified information. As already noted, Mr. Mansolillo's pursuit of this information was within the standard of care of a reasonable defense attorney. His efforts to obtain permission to disclose such information failed because the court, having reviewed the documents, disagreed with his argument, not because he was ineffective in making that argument. Because Mr. Lustyik was not going to be able to present this classified evidence at trial regardless of Mr. Mansolillo's alleged

ineffectiveness, there is a reason to conclude he would have obtained a better outcome by going to trial.

The only non-classified documents Mr. Lustyik suggests he would have presented, but for Mr. Mansolillo's incompetence, is evidence that BME was a legitimate company and not, as the United States claimed, a means of funneling money between Mr. Taylor, Mr. Thaler, and Mr. Lustyik. (Lustyik Decl. ¶ 51.) But as discussed above, Mr. Feldman had invoked his Fifth Amendment right against self-incrimination, and Mr. Mansolillo's failure to prepare a defense based on BME and Mr. Feldman was reasonable in that situation.

Accordingly, Mr. Lustyik has not shown that he was prejudiced by his decision to plead guilty. Even if that plea was motivated primarily by Mr. Lustyik's realization that his attorney was not prepared to successfully defend him at trial, Mr. Lustyik was almost certainly going to lose at trial anyway.[8]

## C.     Failure to Negotiate a Plea Deal

As noted above, the Supreme Court has stated that "[i]n the context of guilty pleas, . . . in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 58. But Mr. Lustyik argues he can also satisfy this prong by showing that, but for counsel's ineffectiveness, he would have been able to negotiate a favorable plea deal with the United States.

The United States' only response to this assertion is to state, in its opposition brief:

[T]he defendant's § 2255 claim here is premised on the assumption that the Government was willing to negotiate with his counsel the weekend between the

---

[8] The court notes that this conclusion applies equally to Mr. Lustyik's earlier argument regarding Mr. Mansolillo's failure to warn him of the consequences of his plea. Even if, for some reason, the court's discussion with Mr. Lustyik at the change of plea hearing did not cure Mr. Mansolillo's ineffectiveness, Mr. Lustyik still was not prejudiced because the outcome at trial would have been worse than his allegedly uninformed plea.

> Court's CIPA ruling and the beginning of jury selection. It was not. The time for
> plea negotiations had long since passed. After fully preparing for trial and
> committing substantial resources to the defendant's aggressive CIPA litigation,
> there is no reason why the Government would have engaged in any plea
> negotiations the weekend before trial, particularly with overwhelming evidence of
> the defendant's guilt.

(Opp. at 19 (77 ECF No. 10)).)

This response is not particularly compelling. Notably, the statement is not made in a

sworn declaration. And even if it were, Mr. Lustyik has reasonably called the United States'

claim into doubt by noting that the United States <u>was</u> willing to work out a plea deal with Mr.

Thaler after trial was set to begin. (<u>See</u> 645 ECF No. 903.) Of course, the United States may

have legitimate reasons for treating Mr. Thaler and Mr. Lustyik differently but it has not

articulated such reasons in its briefing.

But ultimately, Mr. Lustyik's argument fails for a more basic reason: Mr. Mansolillo's

failure to secure a plea deal is not sufficient to satisfy the second <u>Strickland</u> prong under Tenth

Circuit precedent.

In <u>Lee v. United States</u>, the Supreme Court, without deciding the issue, appeared to leave

open the possibility that a petitioner could satisfy the second prong by showing he would have

negotiated a better plea deal. <u>Lee</u>, 137 S. Ct. at 1966 n.2 ("Lee also argues that he can show

prejudice because, had his attorney advised him that he would be deported if he accepted the

Government's plea offer, he would have bargained for a plea deal that did not result in certain

deportation. Given our conclusion that Lee can show prejudice based on the reasonable

probability that he would have gone to trial, we need not reach this argument.")

Every circuit to address the question has agreed that the prejudice prong could be

satisfied by showing a plea deal could have been reached if the petitioner had competent counsel.

<u>Rodriguez-Penton v. United States</u>, 905 F.3d 481, 488-89 (6th Cir. 2018) (collecting cases from

the D.C. Circuit, Second Circuit, Fourth Circuit, Seventh Circuit, and Ninth Circuit); see also

Byrd v. Skipper, 940 F.3d 248, 257-58 (6th Cir. 2019) ("[W]here a petitioner alleges ineffective

assistance of counsel prevented plea negotiations, demonstrating prejudice requires that he

establish a reasonable probability that but for counsel's errors, the petitioner would have received

a plea offer. . . . [A] petitioner must also show that he would have accepted the offer, the

prosecution would not have rescinded the offer, and that the trial court would not have rejected

the plea agreement.").

But so far as the court can determine, the Tenth Circuit has never addressed this issue.

Absent such authority, the court must continue to apply the standard set down by the Supreme

Court in Hill, which requires that a petitioner show that he would have gone to trial.

Accordingly, even if Mr. Lustyik could show that a different defense counsel would have been

able to secure a more favorable plea agreement, Mr. Lustyik would not be entitled to relief under

the second prong of the Strickland test.

## D.     Failure to Disclose Existing Plea Offers

Closely related to the above, Mr. Lustyik insinuates that it is possible the United States

did make a plea offer, and that Mr. Mansolillo simply failed to tell Mr. Lustyik about it.

The Tenth Circuit has specifically held that an ineffective counsel claim may arise in this

context:

> The plea bargaining process is a critical stage of a criminal prosecution. . . .
> Accordingly, the Sixth Amendment applies to representation during the plea
> process.
>
> Mr. Williams was entitled to the effective assistance of counsel during plea
> negotiations, including the decision whether to accept or reject the plea offer.  See
> Nunes, 350 F.3d at 1052-53. He was thereby prejudiced because had he been
> adequately counseled, there is a reasonable probability that he would have
> accepted the plea offer and limited his exposure to ten years.

Williams v. Jones, 571 F.3d 1086, 1090-91, 93 (10th Cir. 2009).

Nevertheless, the court does not believe Mr. Lustyik has provided a sufficient basis from which the court could conclude such a plea offer existed. Mr. Lustyik declares that Mr. Mansolillo never informed him of any plea offers. (Lustyik Decl. ¶¶ 68, 88.) The only reason he suspects there was an offer is that, after he pled guilty without a deal, Mr. Mansolillo publicly told the media that Mr. Lustyik had been offered a deal and turned it down because the deal would have required that Mr. Lustyik testify against Mr. Thaler. (See Lindsay Whitehurst, "Ex-FBI agent pleads guilty in military contract fraud scheme," Associated Press, Sept. 29, 2014, Motion Ex. O, (77 ECF No. 1-15); Jorge Fitz-Gibbon, "Robert Lustyik, ex-FBI agent, pleads, fights jail," The Journal News, Sept. 30, 2014, Motion Ex. P (77 ECF No. 1-16).)

There is no reason to believe that Mr. Mansolillo's statements to the media were true. In particular, the court notes that Mr. Lustyik's declaration is silent regarding whether he ever confronted Mr. Mansolillo about such an offer after learning of Mr. Mansolillo's public statements. Presumably, upon hearing what Mr. Mansolillo had said, Mr. Lustyik would want to investigate further, but he provides no evidence that he did so.

Moreover, assuming Mr. Mansolillo's statements were true, Mr. Lustyik never declares that he would have accepted a deal that required him to testify against his childhood friend and co-defendant, Mr. Thaler. Indeed, it is entirely unknown under what conditions Mr. Lustyik would have accepted a plea deal.

"[S]elf-serving speculation will not sustain an ineffective assistance claim." United States v. Gallant, 562 F. App'x 712, 716 (10th Cir. 2014) (quoting United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991)). Because Mr. Lustyik's suspicions about a possible plea offer are entirely speculative, this argument does not entitle him to relief.

Accordingly, none of Mr. Mansolillo's conduct during the plea phase prejudiced Mr. Lustyik within the meaning of § 2255.

## III. Counsel's Conduct During the Post-Plea Phase

On November 7, 2014, the court granted Mr. Mansolillo's motion for leave to withdraw as counsel, and appointed Michael Langford as Mr. Lustyik's primary counsel. (645 ECF No. 938.) Mr. Lustyik's motion challenges several aspects of his post-plea representation, but he frequently refers only to his "counsel's" ineffectiveness, making it unclear whether any given allegation is about Mr. Mansolillo or Mr. Langford. As much as possible, the court has determined from context to which attorney Mr. Lustyik is referring.

## A. Presentence Report and its Effect on Sentencing

Mr. Lustyik declares that Mr. Mansolillo informed him about his presentence interview with the probation office only a couple of hours before it was set to begin; that he provided no advice regarding how to handle the interview; and that he failed to accompany Mr. Lustyik to the interview. (Lustyik Decl. ¶ 91-92.) Mr. Lustyik contends this harmed him in two ways. First, Mr. Lustyik failed to inform the interviewer that he had a drug addiction, and because that information was not included in the presentence report ("PSR"), he is now ineligible for certain drug treatment programs in prison. (Id. at 92-93.) And second, the PSR indicated his forfeiture amount would be $200,000 (based on the allegations of the indictment), resulting in a total offense level of 34 for purposes of the federal sentencing guidelines. (PSR at 17 (645 ECF No. 994).) But in fact, the court only found Mr. Lustyik liable for a $70,000 forfeiture. (See 645 ECF No. 1027.) Had the PSR used the $70,000 figure for its calculation instead of $200,000, his total offense level would have only been 30. See 2013 Federal Sentencing Guidelines Manual § 2B1.1(b)(1).

Although Mr. Mansolillo was representing Mr. Lustyik at the time of the presentence interview, Mr. Langford was representing him by the time of sentencing. Accordingly, Mr. Lustyik asserts both that Mr. Mansolillo was ineffective in preparing him for the interview and that Mr. Langford was ineffective in correcting the errors in the PSR at his sentencing hearing. (Lustyik Decl. ¶¶ 91-93, 118-21, 124-26.)

The court concludes that while Mr. Mansolillo was likely ineffective in failing to prepare Mr. Lustyik for the interview, this does not provide a basis for relief. As the United States notes, "the presentence interview is not a critical stage of the proceeding within the meaning of the Sixth Amendment." United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993). Because Mr. Mansolillo's ineffectiveness at the presentence interview stage is not a violation Mr. Lustyik's Sixth Amendment right to competent counsel, his motion cannot be based on that claim.

Effective counsel at sentencing, on the other hand, is protected by the Sixth Amendment. United States v. Horey, 333 F.3d 1185 (10th Cir. 2003). So arguably, Mr. Langford may have been ineffective in not raising the flaws in the PSR at the time of sentencing. But the court concludes that, even if Mr. Langford was ineffective on this issue, Mr. Lustyik was not prejudiced by this ineffectiveness. First, regarding drug use, the court asked at sentencing whether Mr. Lustyik struggled with substance abuse and Mr. Langford said no. (Sentencing Hearing Transcript at 35:18-22 (645 ECF No. 1047).) That would have been an appropriate time for Mr. Lustyik to clarify the record, but he did not do so, presumably because the terms of his supervised release would have actually been more stringent if he had raised the issue. Id.

Second, regarding his calculated offense level, "a defendant must not only allege [the] prejudice of being erroneously sentenced under a higher guideline but must also demonstrate that the error produced 'a large' or 'significant' effect on the sentence." Horey, 333 F.3d at 1187-88.

Here, under the PSR, Mr. Lustyik's total offense level was 34, and the federal sentencing guidelines set a sentence of 151 to 188 months. If the total offense level had been 30, the guideline recommendation would have been 97 to 121 months. At the sentencing hearing, Mr. Langford persuaded the court to impose a sentence of 120 months, even though the recommended minimum was 151 months. Accordingly, Mr. Lustyik was already sentenced to a prison term that fell within the guideline range that should have been applied. Whether his sentence would have been even lower had Mr. Langford raised the forfeiture issue at sentencing is entirely speculative and so does not provide a basis for additional relief.

## B.        Forfeiture and Sentencing

Mr. Lustyik also contends more generally that Mr. Mansolillo failed to prepare Mr. Langford for the forfeiture and sentencing hearings and failed to prepare Mr. Langford to make certain arguments against the enhancements sought by the United States. (Lustyik Decl. ¶¶ 106-12.) Mr. Lustyik also states that Mr. Langford failed to sufficiently challenge the United States' requested enhancements and failed to request that Mr. Lustyik's forfeiture hearing be separate from Mr. Thaler's forfeiture hearing. (Lustyik Decl. ¶¶ 117-21, 124-26.)

These claims are too vague. The court does not know what arguments Mr. Mansolillo was supposed to provide to Mr. Langford, or what effect they would have had on the outcome of the case. Mr. Lustyik does not explain how he was prejudiced by having a joint forfeiture hearing with Mr. Thaler. And Mr. Langford <u>did</u> argue at the sentencing hearing, at length, against certain enhancements. (Sentencing Hearing Transcript at 4:22-11:3 (645 ECF No. 1047).) Mr. Lustyik does not explain what other arguments Mr. Langford should have made. Because Mr. Lustyik does not explain what Mr. Mansolillo or Mr. Langford did wrong, or how

the outcome of the action would have been better if they had acted differently, he is not entitled to relief.

## C.  Classified Information and Appeal

Mr. Lustyik also alleges Mr. Langford was ineffective during the sentencing hearing because the court refused to allow him to review classified information that would have helped him obtain a lower sentence for Mr. Lustyik.  But the court specifically rejected this argument at the hearing:

> Let me just say to whatever extent, referring to the classified information, I will tell you that I agree with Judge Pead that access to classified information would not add to your ability to make a good argument and to argue for your client. To the extent that it would be relevant, I am well aware, mainly from the materials that Mr. Taylor has sent, that Mr. Taylor may have had some value as an operative or as a contact, which is what I think you were needing that for.

(Sentencing Hearing Transcript at 14:17-25 (645 ECF No. 1047).)

Mr. Langford then raised this issue on appeal, where it was also rejected.  See United States v. Lustyik, 833 F.3d 1263 (10th Cir. 2016).  Mr. Lustyik states that it was only rejected because Mr. Langford was ineffective in presenting a compelling case to the Tenth Circuit (Lustyik Decl. ¶ 122), but Mr. Lustyik has not actually explained what Mr. Langford did that was ineffective.  Mr. Lustyik also vaguely suggests that Mr. Langford was ineffective because he did not raise all possible arguments on appeal, meaning Mr. Lustyik forfeited some arguments (id. at ¶ 129), but Mr. Lustyik does not identify what arguments were lost.

Accordingly, none of these assertions support granting the motion.

## D.  Impact on the New York Case

Finally, Mr. Lustyik claims Mr. Langford was ineffective because he failed to obtain a sufficiently clear sentence in the Utah action prior to Mr. Lustyik's sentencing in New York.  (Id. at ¶ 127.)  This court originally sentenced Mr. Lustyik to 120 months in prison.  (645 ECF No.

1030.)  But the court did not connect that sentence to the specific counts in the indictment, and following an appeal, the Tenth Circuit instructed the court to clarify the sentence.  Lustyik, 833 F.3d at 1272.  This court then explained that the sentence was actually ten sixty-month sentences on counts two through eleven, which ran concurrently with one another, plus a sixty-month sentence on count one, which ran consecutively to the other sentences.  (645 ECF No. 1063.)

While the appeal of his Utah sentence was ongoing, Mr. Lustyik was sentenced in New York.  He argues that if the New York court had known about the corrected sentence Mr. Lustyik received after the appeal, it might have imposed a lower sentence there.  This is a highly speculative proposition.  It is also not properly before this court.  Although the ineffectiveness identified by Mr. Lustyik (the failure of Mr. Langford to clarify the sentence at the sentencing hearing, requiring an appeal) occurred in this action, the alleged prejudice (the sentence he received in New York) occurred in a separate action over which this court has no jurisdiction. Perhaps Mr. Lustyik's New York counsel was ineffective in presenting to that court Mr. Lustyik's concerns about his sentence here, and perhaps, had that issue been raised, the New York court would have imposed a different sentence, but this court cannot provide Mr. Lustyik any relief relating to his sentence in New York.

Relatedly, Mr. Lustyik contends Mr. Langford failed to properly coordinate his arguments during sentencing with Mr. Lustyik's counsel in New York.  (Lustyik Decl. ¶ 128.) But aside from the above, Mr. Lustyik has not explained what effect this lack of coordination had on his sentence in either action, so he has not shown prejudice.

Accordingly, Mr. Lustyik has failed to show that any post-plea conduct by either Mr. Mansolillo or Mr. Langford prejudiced the outcome of this action.

**ORDER**

For the reasons stated above, Mr. Lustyik's motion to vacate (ECF No. 1) and motion for an evidentiary hearing (ECF No. 4) are DENIED. Mr. Lustyik's motion to appoint counsel (ECF No. 6) is also DENIED.

DATED this 21st day of November, 2019.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

**APPENDIX**

| No. | Statement | Source |
|---|---|---|
| Counsel's Conduct During the Pretrial Phase |
| 1 | Mr. Mansolillo failed to object to Mr. Lustyik's treatment during the search of his home and his arrest. | Ground Four;[9] Lustyik Decl. ¶¶ 10-13.[10] |
| 2 | Mr. Mansolillo relied on counsel for Mr. Lustyik's co-defendant to pursue a motion to suppress evidence, rather than proceed with his own motion. | Ground Three; Lustyik Decl. ¶ 28. |
| 3 | Mr. Mansolillo failed to obtain a joint defense agreement with Mr. Lustyik's co-defendants. | Ground Three; Lustyik Decl. ¶ 40. |
| 4 | Mr. Mansolillo failed to seek a plea deal early in the case, despite Mr. Lustyik's request that he do so. | Ground One; Lustyik Decl. ¶¶ 8-9, 10-13, 19-37, 53, 55. |
| 5 | Mr. Mansolillo sent his investigator, Mr. Mulcahy, to review classified discovery, rather than review it himself. | Ground Three; Lustyik Decl. ¶ 42. |
| 6 | Mr. Mansolillo failed to conduct discovery relating to Blue Meadows Energy, LLC ("BME") and its founder, Michael Feldman. | Ground Three; Ground Five; Ground Six; Lustyik Decl. ¶ 51. |
| 7 | Mr. Lustyik provided Mr. Mansolillo with numerous potential witnesses to interview and recommended other avenues of discovery but Mr. Mansolillo failed to follow-up with them. | Ground Three; Ground Four; Lustyik Decl. ¶¶ 42, 46-50. |
| 8 | Mr. Mansolillo failed to challenge the involvement of Mr. Driscoll in the case, despite Mr. Lustyik's belief that Mr. Driscoll was biased against former FBI agents such as Mr. Lustyik. | Ground Four; Lustyik Decl. ¶¶ 16-18. |
| 9 | Mr. Mansolillo failed to present evidence to the court that the entire action was a conspiracy against Mr. Lustyik, in retaliation for the fact that Mr. Lustyik had been cleared of wrongdoing in an unrelated Department of Justice investigation. | Ground Four; Lustyik Decl. ¶ 19. |
| 10 | Mr. Mansolillo failed to defend Mr. Lustyik during his bond revocation hearing. | Ground Four; Lustyik Decl. ¶ 15. |
| 11 | Mr. Mansolillo failed to object to the conditions placed on Mr. Lustyik while he was subject to home confinement, which made it impossible for Mr. Lustyik to communicate with Mr. Mansolillo. | Ground Four; Lustyik Decl. ¶ 14. |
| 12 | Mr. Mansolillo was ineffective, as demonstrated by the fact that he was threatened with contempt of court for failing to return classified information he had obtained during discovery. | Ground Three; Lustyik Decl. ¶ 22. |

---

[9] See Petition (77 ECF No. 1).
[10] See Affidavit of Robert Lustyik in Support of Petition, Motion Ex. B (77 ECF No. 1-2).

| | | |
|---|---|---|
| 13 | Mr. Mansolillo failed to obtain classified information that would have aided Mr. Lustyik's defense. | Ground Three; Lustyik Decl. ¶¶ 57-62. |
| 14 | Mr. Mansolillo had a conflict of interest that should have prevented his representation of Mr. Lustyik. | Ground Three; Lustyik Decl. ¶ 40. |
| 15 | Mr. Mansolillo's motive for doing such a poor job during the case was that he was engaged in a financial dispute with Mr. Lustyik regarding the payment of his fees, and he decided to slow-walk his defense of Mr. Lustyik as punishment for these unpaid fees. | Ground Three; Lustyik Decl. ¶¶ 16, 24-25, 95-98. |

| Counsel's Conduct During the Pleading Phase | | |
|---|---|---|
| 16 | Mr. Mansolillo did not inform Mr. Lustyik of the consequences of pleading guilty without a plea agreement with the United States. | Ground Two; Lustyik Decl. ¶¶ 78-79. |
| 17 | Mr. Mansolillo did not inform Mr. Lustyik of the effect pleading guilty in Utah would have on a separate, ongoing case in New York. | Ground Two; Lustyik Decl. ¶¶ 72-73. |
| 18 | Mr. Mansolillo misrepresented the length of sentence Mr. Lustyik was likely to receive. | Ground Two; Lustyik Decl. ¶ 70. |
| 19 | Mr. Mansolillo failed to advise Mr. Lustyik that he was pleading guilty to all counts. | Ground Two. |
| 20 | Mr. Mansolillo failed to advise Mr. Lustyik that he would not be receiving all three points of downward variance for accepting responsibility. | Ground Two. |
| 21 | Mr. Mansolillo threatened and bullied Mr. Lustyik into pleading guilty. | Ground Two; Ground Three; Lustyik Decl. ¶¶ 74, 76, 84-86, 95-98. |
| 22 | Mr. Calabro told Mr. Lustyik that Mr. Mansolillo was not prepared for trial. | Ground Two; Lustyik Decl. ¶ 65-66. |
| 23 | Mr. Mansolillo failed to bring Mr. Mulcahy to Utah for the trial. | Ground Two; Ground Three; Lustyik Decl. ¶ 67. |
| 24 | Mr. Lustyik realized in the days before trial that Mr. Mansolillo was badly unprepared. | Ground Two; Lustyik Decl. ¶¶ 63-67. |
| 25 | But for Mr. Mansolillo's ineffectiveness, Mr. Lustyik would have gone to trial and prevailed because he could have asserted the Public Authority defense successfully. | Ground Three; Lustyik Suppl. Decl. ¶¶ 4-6.[11] |
| 26 | Mr. Mansolillo failed to negotiate a plea deal before trial. | Ground One; Lustyik Decl. ¶¶ 68-70, 77-78. |
| 27 | Mr. Mansolillo failed to inform Mr. Lustyik of any plea deals offered by the United States. | Ground One; Lustyik Decl. ¶¶ 68, 88. |

---

[11] See Supplemental Lustyik Declaration, Reply Ex. H (77 ECF No. 21-8).

| | Counsel's Conduct During the Post-Plea Phase | |
|---|---|---|
| 28 | Mr. Mansolillo failed to advise Mr. Lustyik of the importance of the presentence interview and failed to accompany Mr. Lustyik to that interview. | Ground Five; Lustyik Decl. ¶¶ 91-93. |
| 29 | Mr. Mansolillo failed to prepare Mr. Langford for the forfeiture and sentencing hearings. | Ground Five; Lustyik Decl. ¶¶ 106-112. |
| 30 | Mr. Mansolillo failed to prepare Mr. Langford for counterarguments to the United States' enhancement requests. | Ground Five; Lustyik Decl. ¶¶ 106-1112. |
| 31 | Mr. Langford did not know it was important to separate Mr. Lustyik's and Mr. Thaler's forfeiture hearings. | Ground Six; Lustyik Decl. ¶ 117. |
| 32 | Mr. Langford failed to explain why Mr. Lustyik should not be subject to monetary and supervisory enhancements. | Ground Six; Lustyik Decl. ¶¶ 118-121; 124-26. |
| 33 | Mr. Langford's defense of Mr. Lustyik at the forfeiture and sentencing hearings was ineffective because he lacked access to necessary classified information. | Ground Six; Ground Seven; Lustyik Decl. ¶¶ 43-44, 122. |
| 34 | Mr. Langford did not sufficiently convey, on appeal, why classified information was necessary to Mr. Lustyik's sentencing. | Ground Seven. |
| 35 | Mr. Langford failed to raise all relevant arguments on appeal. | Ground Seven; Lustyik Decl. ¶ 129. |
| 36 | Mr. Langford failed to designate whether the sentence was concurrent or consecutive, which affected the length of his sentence in New York. | Ground Six; Ground Seven; Lustyik Decl. ¶ 127. |
| 37 | Mr. Langford failed to coordinate arguments with Mr. Lustyik's New York counsel. | Ground Six; Ground Seven; Lustyik Decl. ¶ 128. |